First case for argument today is 2019-1330, DAI Global v. Administrator of USAID. Mr. Schaffer, please begin. May it please the Court, I'm Jonathan Schaffer for the appellant, DAI Global. The Board erred as a matter of law below in dismissing DAI's appeal, and the Court should reverse based on at least three alternative grounds. First, the Board failed to follow the plain language of the statute, and instead the Board relied on language that had been rejected by Congress, never became part of law. The Board relied on language that talked about a technical defect, about reckless disregard. That language was in the Senate bill, and the Senate bill, it passed the Senate, never passed the House, never became law. Other way around, right? Wasn't it in the House bill, not the Senate bill? Well, if you look at the legislative history, it's convoluted. It started off in the Senate bill, and it passed the Senate. It was dropped, and in the final analysis, those words that the Board relied on, technical and reckless disregard, are not in the law that was passed in time by the present law. Mr. Schaffer, what is the status? I know there was a claim filed on April 3rd of 2018. What is going on with that now? Right now, nothing's happening with that, but as a matter of, I guess the important thing is that that claim, if that was the only claim there was, was April 2018. That's time barred. It's beyond the statute of limitations, and that's really a critical aspect of this case. The law abhors a forfeiture. It's an ancient maxim, and that's the case here. By dismissing on jurisdictional grounds, contrary to the statute, the Board basically has caused our client to forfeit their claim. And so statute of limitations and interest are what's really the key. Well, it's statute of limitations is really what's key here, because that April certification is beyond that time period. But the important thing is that the May 10 letter, the certification, met the requirements of the statute in terms of being a defective certification. In the plain language of the statute, the 1992 amendment, and the amendment, remember, was supposed to fix these problems. There had been hundreds of cases at the Boards and the Court of Federal Claims involving certification. Congress wanted to fix that, and they said no longer is certification a jurisdictional issue. If you have a defective certification, it can be cured, and that's what our client did. They submitted a certification that they thought met all the requirements. I think the government recognizing that makes as its principal argument that the May 10th submission was not a certification at all. So what is, I guess, the distinction? And second, assuming that to clear the, this is a certification, though defective, it needs to be somehow resemble, it needs to somehow resemble what the statute requires. Why does the May 10th letter somehow resemble what the statute requires? Right, and let me start with that last point. It's in the appendix, page 29, and the government in response to that May 10 certification on July 19, which is more than 60 days beyond the statutory response period, they came back and they said you never submitted a certification. All you have is something from your subcontractor. But if you turn to appendix page 29, the certification is on DAI letterhead, that's the prime contractor. It's signed by a DAI official, and it specifically invokes the Contract Disputes Act. It says these sponsors' claims are submitted in accordance with the FAR and the Contract Disputes Act. Then it has five contracts listed, and those are the five prime contract numbers. And then it says DAI believes there's a sound basis for the claim, and they say we submit this claim, this certification, in satisfaction of the requirements of the Contract Disputes Act. So they were clearly invoking a certification under the Contracts Disputes Act. Now they didn't follow all the formal words. They didn't use the magic words, the four prongs of the CDA, but they invoked it. They said on the cover letter, we're following the CDA certification requirements. And the government responded more than 60 days later. They were supposed to respond within 60 days. They didn't follow the rules, but they responded later. And they said we never got a certification from you. We only have a subcontractor certification. But this is not a subcontractor certification. It says right on it, it's from DAI. It's signed by DAI, and it says that there's sound basis for the claims and that it's submitted in accordance with the Contract Disputes Act. It uses language that talks about ERSM's certified claims. Why does that not suggest that this isn't really DAI's certification? Well, it's a pass-through claim, and you're always going to have that type of language in a pass-through claim. And this court in Turner and in Transamerica approved of that approach because the prime contractor is the only one who has privity with the government. So it has to be that the prime is passing through the claim. Now, the subcontractor is the one who has the books and the records. They have all the knowledge about, in this case, fines and how it's allocated between the various contracts. So the first step is the prime gets from the subcontractor a certification. And then they take it, and they put on top of it their own certification in accordance with the Contract Disputes Act. And let me ask you, we have at A47 an example of one of the subcontractor certifications. There were five of these, one for each subcontractor. Is there any relevance to the subcontractor certification in this case? Because it does seem that that certification, albeit by a subcontractor, has the magic language required by the regulation. Well, under Turner and Transamerica and under the court's jurisprudence, you still need a certification of some sort from the prime contractor. So the subcontractor certification all by itself would not be sufficient. But what's important, though, is Turner and Transamerica says you can have these pass-through claims. You just have to say that there's good ground for them. And then in 1992, Congress said we're tired of all this litigation over what's a certification, who's the authorized official, did they use all the magic words. And so Congress expressly stated that defective certification is no longer jurisdictional. And this case really is a classic example of what Congress was trying to fix. This is a certification that did not meet all of the formal requirements of the Contract Disputes Act, but it was a defective certification. And if you look at the Black's Law Dictionary definition of defective or dictionary definitions of something that lacks legal sufficiency, that's something that's inadequate. And that's what this is. It's not something that's made with reckless disregard of the law or some other standard that the court might come up with. Because they said on the face that we're invoking the Contract Disputes Act. And so they followed the language. They identified the specific federal government contracts that are issued. And that should be sufficient. Now, Judge Taranto did have a question about jurisdiction. You know, under the Supreme Court's recent decisions in Arbaugh and Auburn, it's my view that certification at all is not jurisdictional. And the Supreme Court has said basically don't go looking for jurisdictional language in a statute if it's not there. If Congress hasn't clearly said a requirement is jurisdictional, don't treat it as jurisdictional. And that's really what the board has flipped that on the head and said we're going to treat this requirement as jurisdictional. Now, in a sense, isn't it jurisdictional in the sense that you, in other words, to have jurisdiction, as I understand it, correct me if I'm wrong, Mr. Schaffer, under the CDA, you have to have a claim submitted to a contracting officer. And in the case of a claim worth more than $100,000, there has to be a certification. So I think the government could say that if it receives a claim for $150,000 without a certification, there's no claim under the CDA and hence no jurisdiction. I would understand that position before the 1992 amendment. The 1992 amendment specifically addressed that. It said that if you have a defective certification, it's not jurisdictional. And then it told the board and the Court of Appeals. No, I'm saying if there was no certification at all. Oh, if there's no certification at all. Well, I don't think that you have to reach that because there was certification here. Oh, no, I understand, but just thinking hypothetically, in that respect, it seems like certification could be part of the jurisdictional trail, if you will. It could be, but I think that's an unanswered question at this point because of Arbaugh and Auburn. I think the Court has said don't look for a jurisdictional meaning in a statute when it's not there, when it's not clear on its face. Now here, again, you don't have to reach that because the language talked about defective certification. Well, you wouldn't necessarily have a final decision in the situation Judge Schall is articulating, right? Because the deemed denial 60 days out is from when the claim was filed with the defective certification and the officer doesn't notify you. Is that right? That's right. So what happens? You might not, in Judge Schall's scenario, have a final decision from which could be appealed. You could have that situation. I see what you're saying. Yes, you could have that situation, although... But that's not the case here. You're talking about if there was no certification at all. Yes. My question was premised on no certification. So your entire case, as I understand it, hinges on whether we agree that the May 10th letter on page Appendix 29 amounts to a defective certification because the August letter, then the contracting officer came back within the 60-day period and said it's defective. So you don't have a deemed denial for the August letter, correct? That's correct. There wouldn't be a final decision. If I said the May 10th letter wasn't a defective certification, but maybe the August one was, you have action by the contractor within 60 days, so you have no final decision from which you can appeal at that point. The May 10 certification is critical because, first of all, anything more than 60 days beyond that is beyond the statute of limitations. So really, if the court rules that the May 10 letter certification is not a certification, then there's a statute of limitations problem. But also, just to come back to... Just to be clear, and I don't think this matters at all to your point, I thought that the timing provision said 60 days the CO has to tell you it's defective or give you a decision, and the CO here on the 61st day, which was on Monday, did that by saying, I'll give you a decision in 45 days, 45 days elapsed. I thought it's at that point that there's a deemed denial, not back on July 10th. Well, no. On July 10th, the statute says that within 60 days of the claim submission, the government has to tell you why any attempted certification was found to be defective, and that was never provided. It doesn't say or when I'm going to make a decision. That's a different part of the statute. 7103B3 is what you're talking about. 7103F2 is what you're... That's the language that talks about a decision, but with regard to defective certification... So was there a deemed denial on July 10th? Yes, because... Weren't you out of time in seeking your appeal if July 10th was the date? I'm sorry, the... Well, no. The clock would start with May 10 in terms of what the statute of limitations would run from. I'm sorry. Help me out because these details in your head... I thought there is either a 90- or 120-day statute of limitations from the decision to file in the board. Yeah, I'm sorry. When did you file in the board? We filed it in November, but when I talk about a statute of limitations problem... Forget about the label. Yeah. I was talking about the six-year statute. That's a different issue. The six-year statute runs from... I'm not interested in that. Yeah. If things started on May 10th or July 10th, did you meet the timing requirement for going to the board? Yes, because under a deemed denial in this court, there's a case called Case and there are others, and under the statute... Is it 90- or 120-days? It's 90 days to go to the board, a year to go to the court of federal claimant. When did you file in the board? In November. But it doesn't start after 60 days. There's a case from this court called Case, and I can get the citation to it, that says that it's at the contractor's election as to when that period starts to run. In other words, the contractor doesn't have to say it's deemed denied on day 61. There's extensive case law on that where the federal circuit has said that it's at the contractor's election.  Otherwise, the government would let 90 days go by and then say, well, it's too late to go to the board. And that defeats the whole purpose of this, having the board as its resolution forum. The case I mentioned is Case v. United States, 88 F3D 1004 from 1996. And there are other decisions, I think, to talk about how the deemed denial provision is at the contractor's election. So they don't have to immediately treat it as a deemed denial on day 61. What's the page number on that 88 Fed Third site, Mr. Chairman? Yeah, 88 F3D 1004. Okay, thank you. You're well beyond your rebuttal time. Do you want to save any? Yes, I deserve my time. Let's hear from Mr. Long. May it please the court. I think the court does understand that the focus here is that May 10 submission. Can you start where we left off, though? Has the government argued that if the May 10th submission is a defective certification, and therefore if there was a deemed denial because the contracting officer didn't respond within 60 days, is Mr. Schaffer correct that the law allows the contractor more than the typical 90-day period in which to appeal to the board when you have a deemed denial? I confess, Your Honor, I did not review that case law in preparation here. That is my general recollection of the law. I don't have any reason standing here to believe that my friend is incorrect. But I couldn't verify. You all didn't raise, for example, any kind of jurisdictional impediment in this case with vis-a-vis that appeal to the board, at least thus far, right? Correct, Your Honor. Our argument has been, as set forth in the briefs, that it was no certification at all. And so there was no deemed denial on July 10, 2017. Rather, there was no certification in the May 10th submission. And the reason we've taken that position is, as this court recently said in Hijrat Hijrat, certification is designed to trigger a contractor's liability for fraudulent claims and to discourage the submission of unwarranted claims and encourage settlement. So the way that the structure is designed is that it flows through the contracting officer. And without the certification in front of the contracting officer, the contracting officer has no way of knowing whether the claim has been submitted in good faith, whether the amounts are accurate, whether the facts are complete, and the additional requirement that the signer of the claim certify that they're authorized to bind the contractor. That's simply absent from that May 10th submission. As we point out in our briefs, DIAI specifically said- Can I just ask? So the statute, with respect to the accuracy point, doesn't say you have to certify it's accurate. You have to certify it's accurate to the best of your knowledge. And at that point, DIAI, it seems to me, essentially says that. It's just that its knowledge was about this thin at the moment. I think that's right. And so I think you have to- I agree that what they said was not that they had undertaken any sort of investigation. And I understand that's not in the statute. That's not exactly what Your Honor is asking. But what they say is that they have no reason to believe that EI is not proceeding in good faith. But that's different from averring that the facts are complete. And so rather than saying we have determined that this is a complete submission, they said we have no reason to think it's not, which is sort of the mirror image and not what's permitted by the statute. And so also- Wait, it said- No, but the statute says, as just Toronto pointed out, the supporting data are accurate and complete to the best of the contractor's knowledge and belief. What are you suggesting that requires the contractor to do and say in this case? What if they simply said we certify the supporting data are accurate and complete to the best of our knowledge and belief? That would be sufficient, Your Honor. That would be sufficient. Correct. Well, why isn't that kind of what they've done? They said, look, we don't have access to all their numbers. So as far as we know, this looks great. Well, I mean, looking at that May 10 submission, they said that they have no knowledge to suggest that EI has knowingly or intentionally failed to comply with the requirements of the CDA or has acted in that faith. That's different from saying that the supported data are accurate and complete to the best of DAI's knowledge and belief. They're suggesting that they have no reason to believe that EI has not complied with the CDA. Again, that's different from saying that the facts and data set forth are accurate to the best of DAI's knowledge and belief. So I think that- I'm having trouble with that difference. It's just that their knowledge was paper thin. So they are saying this is as much as we know. We don't know a lot. Right. But this is as much as we know. But they're not saying that it's accurate and complete. So they're not saying that the supporting data is complete. All they're saying is that they have no reason to think that it is, that DAI is not complying with CDA or is acting that way. That is a different statement from what's required in 7103B1. They didn't do that. And it's worth pointing out- But they say DAI hereby submits this certification in satisfaction of the requirements of the Contact Disputes Act. So they believe that they're satisfying it. And they say DAI must accept and rely on ERSM certification at face value. So they're telling you that we have to rely on their representations. We have no way of looking beyond the curtain to get a peek at the wizard. We can't do it. And then they say, in addition, we have no knowledge that suggests that they've done anything that isn't accurate. Right. And I think that point, Your Honor, goes back to my friend's contention that somehow the fact of this being a pass-through claim is somehow significant under the CDA. It's not. The CDA doesn't have any provision for pass-through claims. DAI has a relationship with EI. And it may be that whatever relationship they have precludes DAI from understanding the basis for EI's claim. But that's insignificant or irrelevant under the CDA. The point is that the contractor itself needs to take responsibility for the claim to avoid what's been done here, which is the effect of punting it into the contracting officer's lap. Mr. Long, let me ask you. We have here, we have the May 10 letter, and then we've got the certification by the subcontractor. What would be the situation if instead of the May 10 letter that we have here, DAI had said, we incorporate by reference as a certification all of the statements made by EI or ERSM in its certification? What would the government's position be then? Well, I think, Your Honor, the wording of that preface would matter. So they could certify that not merely that we are incorporating the certification, because under the CDA, the certification must be tendered by the contractor. But listen, we incorporate as our – we incorporate by reference as our certification the certification by EI. I don't think that would be sufficient, because at that point, they're not – the DAI would not be standing as verifying and certifying the facts and the underlying information. They can certify – they can say, yes, we are saying that EI has certified this, but that's insufficient. The contractor has to provide the certification. In the language that you're proposing, Your Honor, DAI would not be doing that. They would still be – they would be doing almost the exact same things they've done here, which is to say, look, EI has – I'm sorry, EI has certified that, and that's sufficient. That's not what the CDA contemplates. I mean, I think the parties have brought everything to our attention, but are you aware, Ms. Knoll, of any particular case that focuses on exactly what a prime contractor has to do in this situation when the prime contractor is presenting the claim of a subcontractor that is on its own certified? Are there any cases that really talk about the magic words? I don't think that the exact facts here have been addressed by this attorney. And there's no regulation, I guess, that talks about it, is there? That's correct, Your Honor. And as you point out, there's no statute that – Right, correct. I will say that in the Arnold Diamond case, trans-American Turner, which had been briefed by the parties, there were certain subcontractor issues, but they – the facts were different in those cases, as we point in our briefs, because in each of those three cases, the contractor had submitted a CDA-compliant certification. The question in those cases was whether some reservation of mind in the mind of the contractor as to whether the CO should ultimately grant those claims, whether that negated a CDA-compliant certification. And that's not this case, because there's no – in the May 10 submission, there's no underlying correct – procedurally correct certification. And so the question of a qualification doesn't arise here. Can I just ask you this? The statute has pretty limited language in saying what has to be certified, mostly because it builds into the crucial thing, to the best of my knowledge and belief, which is literally satisfied if you just don't have any real knowledge. Why isn't the kind of normal way interpreting a statute as executed by – applied by an agency, here the CO, would be that if the CO thinks that the contractor hasn't done enough to acquire the knowledge that the government wants in order to hold the contractor liable for claims ultimately traceable to the subcontractor, that that's a matter of the contracting officer telling the claimant contractor, this is not enough, i.e., it's defective. And then – and therefore all in the bucket of a defective certification, which they're entitled to correct if they can. Well, Your Honor, I think if I understand your question, the responsibility to – the contractor's officers – contracting officer's responsibility to reply to a defective certification is different from a non-certification. And we can see that in 41 U.S.C. 7103B3. Right. I guess just maybe to try to simplify. I'm not sure I can. It seems to me that in the absence of language in the statute demanding a certain level of knowledge, it's hard to get a, this is not a certification conclusion, out of a premise that you don't know enough for us to rely on it. That seems more a matter of defect than non-existence. Well, I think that at some point, Your Honor, a difference in degree becomes a difference in kind. And there are four requirements set forth in the CDA. And we've shown that DAI in the May 10 submission meant none of them. So I, of course, understand Your Honor's point about at some point if they say we don't know, they just don't know. And that could be sufficient in statute. But there's also the requirement of statement that the claim is made in good faith. They don't say that. They say sound basis, which is different from good faith. They, we've talked, of course, about accurate complete. There's the amount accurately reflecting the amount that the contractor believes the government is liable. That statement's absence. And there's no statement at all about authority to certify the claim on behalf of the contractor. So the requirements are so absent or the pieces required are so absent here that it becomes a non-certification. And I understand that it, I do think it's a fact-based inquiry that requires CBCA in the first instance in this court to look at what's been submitted. But on these facts, on this submission, it's, it's, there's, it's, nothing's there. And so there is no requirement to issue a final decision. And that, again, Your Honor, goes back to my point that what's happened is that DIA has punted the requirement for developing a complete and good faith claim into the contracting officer's lap. And that hasn't happened here. And so on those grounds, the contracting officer's right to refuse to issue a final decision. So is there, is it the government's position that there has to be a subcontractor certification? Assume for the moment that we had a full and complete certification with all the magic words from the prime contractor. But there was no subcontractor certification. In your, what's your position in that situation? Well, Your Honor, I would say that the CDA doesn't, doesn't create that requirement. The, the, the relevant actor here is the contractor. And throughout the, throughout the statute and the regulations. So you're saying the contractor could receive documents from the subcontractor, but no certification from the subcontractor. And it would be enough if, in that situation, the contractor presented the certification that's required under the statute and regulation. Yes, Your Honor. And I think as a practical matter, that goes back to the relationship between the prime and the sub and the prime's ability to develop the claim, ask questions of the sub, determine whether it believes that there's enough there for the prime itself to make the required certification, put the package in front of the CO and go forward. Does the government view a situation like this as being presented with a subcontractor claim that the prime is just passing through? Or does the government view this as really being a prime contractor claim? The latter, Your Honor. It's a prime contractor claim. And the, the, it is relevant that there's a subcontractor involved, but it ultimately, there has to be a good faith submission. It's a claim by the prime contractor. Absolutely, Your Honor. That's what's required. And Your Honor, you asked earlier. I'm sorry. And even though the subcontractor doesn't have to certify when the contracting officer is deciding whether the claim is valid, is there opportunity for the contracting officer to communicate with the subcontractor so as to get submissions that might be subject to, I don't know, 18 U.S.C. 1001 and other requirements? I believe, I believe that would be possible, Your Honor. I'm not, you know, I'm not thinking of a process right here, but I don't see why that wouldn't be possible. Again, the purpose of... The contracting officer does investigate the claim? Yes. The contracting officer can ask follow-up questions. I mean, the purpose here is, part of the purpose is to encourage settlement. And so there's no reason why in the process of those discussions you couldn't develop more information. I don't see why not. Well, one concern I have is on August 3rd, DAI attempted to correct the problems with the certification. And on August 24th, the contracting officer responded. That's on page 124, is that right? Correct, Your Honor. And what he, she, I don't know, what the contracting officer said was, DAI's letter dated August 3rd does not mirror the certification cited in Transamerica. And again, it says this is not a complete certification. Do you think that the August 3rd letter satisfied the defective certification standard that you would have us adopt? No, we don't, Your Honor. So we've made an alternative argument. And as an initial matter... It seems like the contracting officer did. It seems like he or she in this letter on page 124 understood the August 3rd submission to amount to a defective certification. Is that a fair reading of the contracting officer's response on page 124 and 125? I would agree, Your Honor, that it seems ambiguous from the submission, and I think that is a fair reading. I think it also could be read as the certification is lacking, but I think that the wording that you're pointing to does suggest that the CO saw this as defective, but then... I guess the reason, just to time out, the reason that I'm doing this is because if the August 3rd letter amounts to a defective certification, I'm struggling to find much daylight between the May 10th submission and the August 3rd submission. I don't see that the August 3rd cured the defects that you've identified in the May 10th letter. And so if the contracting officer nonetheless looked at the August 3rd letter and said, this is a defective certification, why wouldn't the May 10th likewise be a defective certification? Are there any critical differences between May 10th and August 3rd that you could point me to that would say, okay, well, this got over the hurdle and went from being no certification at all to being a defective certification? Well, I think that the phraseology of the May 10th letter is much more focused on pointing out that these were claims certified by EI rather than DAI. Whereas if you look at the August 3rd letter, I think DAI says, this is the best we can do, and we believe that this complies with Transamerica. No, but it still says, DAI believes there are good grounds for these claims. We are sponsoring ERSM's certified claims. DAI hereby submits this certification and satisfaction requirements. That language just looks so much like the language in the May 10th letter that I guess I'm not seeing a lot of daylight between the two letters. And my problem is that the contracting officer seemed to treat the second letter as a defective, not a non-certification. Right. I think that here the contracting officer was within her power to decide that this was defective rather than a non-certification and therefore say, fix this. And that sort of discretion lies in her. And I think that, for example, what can happen, and this is what my friend was getting to, is a contracting officer could issue a final decision despite a defective certification. And it could go to a Board of Contract Appeals or the Court of Federal Claims, and that can be corrected where there is a final decision because that's the jurisdictional hook. So, the government, one last question and I'll let you sit down unless my colleagues have anything further. The government, I think it's fair to say, in the red brief, pivots a little bit from the Board decision. You don't have to acknowledge that. You can just say nothing. But I understood it to be a bit of a pivot. One of the things that the Board said on page 8 in particular is to determine whether a certification is correctable. We look at whether the defect is only technical in nature. And they even quoted the word technical as a quotation. Does the government believe that that is the correct standard under the statute to apply? Because the Board then cites a series of contract Board-only cases thereafter. And I'll admit I haven't gone through each of those, but I'm just, I'm a little nervous that the Board has adopted the statute that didn't get enacted as opposed to the one that did. And I'd like the government's views on whether this is a correct statement of the statute that did get enacted. Your Honor, we would submit that you don't need to reach that question. Ultimately, the question of whether it's reckless or grossly negligent is an intent question that doesn't, that you don't need to resolve. The CBCA doesn't need to resolve. You can stop and look at what's been submitted and ask whether it provides enough information and enough certainty for the contracting officer to go forward. But certainly it would matter, for example, if the Board is correct that the only kinds of defects that can be corrected are like sort of small technicality type defects, then it seems to me you have a clear victory with this May 10th letter. So it does matter to me if the Board is wrong and correctability is in fact much broader and the nature of the defects could be of a greater scope, then you have a much tougher, possibly insurmountable case for the May 10th. So actually it does matter to me in terms of the outcome of the case. So I'd like to know whether or not the government thinks this technical only defects is a proper interpretation of the statute that was in fact adopted. Well, I think, Your Honor, this may not be fully satisfying to you, but to answer the question, I think that you can look to the definition of a defective claim in the FAR, which talks about language that alters or deviates from the required certification in the FAR. And that's, I apologize, that's at FAR 33-201. And the Court of Federal Claims has held that alters or deviates suggest some relation to the required language. And here, I think that that plainly allows the kind of analysis that I'm advocating, which is to look at the papers. Except that it actually goes quite a bit further, right? Because FAR 33-201 doesn't just talk about altered or deviating language. It says or, which is not even executed by a person that actually had the authority to bind the contractor. So, wow, that wouldn't be a technical defect, not in the world of contracts, right? I mean, somebody signed it who had no authority? That would not qualify as a technical defect. That seems like a big-time defect. That, as I understand it, Your Honor, the 1992 amendments were designed to fix situations where claims were being considered completely wanting jurisdictionally because the wrong person had signed. And so the purpose of this approach is to allow the correct person to step in and certify a claim after the contracting officer's entered the final decision, and it's before a Board of Contract Appeals. So I agree with you that that's an important point, that you have someone who's actually on the hook for the contractor. The idea here is to allow that kind of correction to occur later, whereas... Is it fair to say that as you've stood here today, you have not defended the Board's opinion to the extent that it held that only technical defects qualify for defective certification? Yes, Your Honor, because I think that that approach is looking at a distinction between technical and the sort of grossly negligent sort of behavior that's described in the draft bill and the bill. And so we don't think you need to get there. We think that's an intent question that need not be considered because this is so far, as I said, a difference in degree becomes a difference in kind, and we think that that's the case here. Thank you, Mr. Long. Mr. Schaffer will restore three minutes of rebuttal time. Thank you, Your Honor. I want to come back to the plain language of the statute because that's where the court is supposed to start with. And one phrase that we haven't talked about in 41 U.S.C. 7103-B3 is an attempted certification because the statute's 1992 amendment says that the contracting officer is supposed to notify the contractor in writing of the reasons why any attempted certification was found to be defective. And we would say that under any analysis, the DAI certification letter at page 29 of the appendix is an attempted certification. And with regard to the various CDA elements that government counsel was talking about, the DAI letter meets those because it says in a sense we are invoking the Contract Disputes Act. It says these sponsored claims are submitted in accordance with the Contract Disputes Act. Now, that's not the magic language. That's not perfect. But it is certainly defective in the sense that it didn't have every single word of the Contract Disputes Act. So it didn't meet the formal requirements, but it was an attempt to meet them. And then they said there is a sound basis for these claims. And when they said that, they were talking about the Transamerica case and the Turner case that says that a prime contractor should have good grounds for relying on a subcontractor's certification. And so they were trying to take advantage of that. The August letter, the second letter that they submitted, we agree that there's virtually no daylight between those two letters. And if you look at that letter, it was in response to the contracting officer's statement that said you never submitted any certification. And that's critical. And that's at appendix 122. In response to DAI's letter, the contracting officer said you never submitted a prime contractor certification. All we have is the subcontractor certification. And DAI didn't understand that because they had had their official sign a letter that said we were revoking the CDA certification requirements. So they tried to explain in the second letter, which they said it was a supplement, that relying on the advice of legal counsel, they were relying on the Transamerica case, which allows a prime contractor to sponsor a subcontractor claim as long as they have good grounds. And that's what they were trying to accomplish. And another point I wanted to make that we're maybe losing sight of is that at the end of the day, the government's protected because the contractor files the claim they want to get paid. But the statute, and I think Congress may have been ingenious in coming up with this, basically they say to the contractor, you will never get paid unless you properly certify. Because the 1992 amendment says prior to entry of a final judgment by a court or board, the court or board shall require a defective certification to be corrected. So this idea that... To be clear, Mr. Schaffer, even if we were to side with you and consider this to be a defective certification that was deemed denied, we then just reverse and remand for the consideration of the merits of the claims. We're not resolving these claims here today, correct? Absolutely. So the contracting officer will decide whether these amounts should or should not be paid. Right. And ultimately, the Board of Contract Appeals, if necessary, will go through that. We're seeking our day in court. And because the board viewed it as jurisdictional, there was never discovery or the other due process rights that a contractor normally has when they're pursuing a claim against the government. They were deprived of that because the board treated it as jurisdictional when it's something that can be fixed under the 1992 amendment. But my point was, at the end of the day, even if we prove up that we're entitled to every penny of our costs, still, the contractor does not get paid. They can't go to the judgment fund. They can't get a judgment from the board until they have a proper certification. So this will be fixed. And I think that's what Congress had in mind, that the contracting officer would tell the contractor... Okay, we have to cut you off. You're well beyond your time, Mr. Schaffer. I thank both counsel for their argument. It was very helpful. The court will take this case under submission.